Would the two of you first step up and identify yourself for the record, and then the appellant can remain and begin when she's ready. Keep in mind that that microphone does not amplify the sound, it simply records it. My name is Robin Robertson with the Office of the State Appellate Defender, and I represent the appellant Sherri Gray. And Mary Golan on behalf of the people. And this morning I'd like to share with the court that our office is hosting a delegation of prosecutors from Beijing, China. And so they're here in the court to watch the argument today. Well, thank you for that information. I'm sure my panel members shared the same curiosity that I had to determine what account for the presence. I thought it was because of the stellar quality of the lawyers who will be arguing the case this morning. I'd like to believe that. You may proceed, Loretta. Thank you. Good morning. Again, may it please the court, my name is Robin Robertson, and I represent the appellant in this matter, Ms. Sherri Gray. I intend to confine my remarks today to the first and second issues raised in the brief. However, I'm happy to answer any questions this court has about the remaining issues. I'd also like to reserve three minutes in rebuttal. Sherri Gray was indicted under Section 3A1 of the Sex Offender Registration Act. The state specifically alleged that she knowingly failed to register in person as a sex offender with the Chicago Police Department within five days of establishing a resident or temporary domicile in the city of Chicago. The state simply failed to prove the elements of this offense beyond a reasonable doubt. First. Is it your position, which you alluded to in your brief, that the offense was geared or referred to the lapse between the date of February 28th when she was apparently released from her incarceration and the date of March 1st, where she apparently first appeared in what she would characterize as an attempt to register, and March 6th, where she again appeared pursuant to that same purported attempt, or whether you're referring or whether the indictment refers to the fact that she wasn't actually deemed as having failed to register in 2009. By having not implemented whatever was considered to be, at least by the police, necessary for purposes of completing that registration and never in fact did. Our position under the terms of the indictment that the state chose to charge her under was that they were charged with proving that she failed to register within five days of having established a resident or temporary domicile. And with that, you're referring to the date between her release from incarceration and March 6th? Our position is that the first date on which that she could have established a resident or temporary domicile was because of her period of incarceration was upon her release, and that's when she appeared on March 4th. She appeared within five days. And then again on March 6th. And then again on March 6th. Although you have other dates that, those are the dates that apparently are a record, your dates would be that she appeared actually on March 2nd? Our position, based on the evidence that was introduced at the bench trial, is that she appeared on March 4th and March 6th. Any information that was introduced during the motion? Well, there are alternate dates noted in your brief, in your statement of facts. If I had spoken my statement of facts, Your Honor, I apologize. There was state evidence that the police department confirmed that she appeared, but they said she appeared first on March 6th. Wasn't that their testimony? Their testimony, the officer that testified could only speak to what transpired on March 6th because he only spoke with her on March 6th. However, the state introduced the sex offender registration law that the Chicago Police Department maintained, which indicated that Sherry Gray also appeared on March 4th, and on that day was turned around because she did not have the proof of address that the Chicago Police Department requires to complete registration. Your position assumes that her appearance, either on the 4th or on the 6th, in an attempt to register, in fact, should be deemed to be, to have satisfied the requirement that she must register and that consequently the state, the calculation of the five days is in error since it doesn't include, since it purports to include the date of her release as well as the date of her appearance. So there are really two things that I'm kind of fishing for right now, which is that basically your position is that the registration, for purposes of compliance with whatever the statute has left after you're finished attempting to vitiate various sections on constitutional grounds, would be that she, in fact, satisfied whatever registration requirement was left and was not, therefore, late. Or are you alternatively seeking to say that there is nothing left of the registration statute? Our position is that she, under the terms of the statute, or the portion of the statute that she was indicted under, she satisfied all of the elements which she was capable of requiring, and because she cannot be held criminally liable for failing to perform an act which she was physically incapable of performing. Or that she has satisfied her statutory requirements, whatever they might be. Because she cannot force the hand of the Chicago Police Department to take her information. So, to sum it up, your position is first she was there, marked forth. Now, what do you believe the statute requires of someone who comes in on that day? What do you believe the statute requires of your client? It's not just showing their cup, correct? Yes, Your Honor. And as the trial court found, under Section 3A1, the section she was indicted with having failed to satisfy, she was required to appear in person, provide accurate information as required by the Chicago, excuse me, as required by the State Police Department. And the court noted that... Well, what is your interpretation of providing accurate interpretation of the resident's information? Well, under Section 3A1 and similarly as Section 8 of the Sex Offender Registration Act states under what are registration requirements that you need to appear, you need to provide accurate information, you need to, you know, not provide a false address. What is the information as to her address anyway? Since at some point in time you also seem to assert that the information as to her intended residence was not really information as to her residence. So what is actually the information that your position would assume she gave? But you also talk about her being homeless, and I'm not quite sure whether you have a position, whether you assume a position, that she in some way or another satisfied the requirement of 3A that the information be accurate. What was that information? Our position is that it was the State's burden to prove where she was living and that she established a residence or a temporary domicile. Well, what information was it? The State relied on an address. What is the information you rely on that she gave? Our position is that we actually have no idea where she was living, how long she'd been living there, and whether it satisfied the definition of residence or temporary domicile. So you argue that the State failed in their burden when you don't, you're not even telling us what you're relying on, other than that she showed up. What does she have to do? I understand the State's burden to prove in every single criminal trial, beyond the reasonable doubt. But in this case, we have to know what you're relying on is what she did to comply with the statute that requires her to do more than simply show up at the police station. What is the evidence that you're relying on that she provided regarding her residence? In other words, if I might even make it more specific with your leave, Justice Smith, right, you don't challenge the constitutionality of 153A as such. And that provision, which is the provision which you also assert, or the provision pursuant to which she was indicted, does require accurate information. Or that she has accurate information as to what her address is, or that she has no address. What was accurate in what you would assert that she actually provided? We know that on March 6th, when she appeared at the police department, that she told the officer she wanted to register where she was living. But you claim that that was not information as to where she was living, because it was given in the form of where she intended to live, and that would not constitute information as to where she does live. And from that, you extrapolate that she was, in fact, to be treated as someone who's homeless. And what's the mechanics of that? Our position is that when she appeared at the Chicago Police Department on March 6th, she was ready and willing to provide address information, any information they wanted to take from her as they were required to under the statute, and that the Chicago police officer is the one who refused to take any information from her because she did not have any information. Was that information accurate? And if so, what was its content? What was its patent content? Because I'm sort of spying based on the... This is not a criticism of your brief. It may be a compliment to it. But it seems to be relatively nebulous in terms of what the hard fact was provided it is. Our position is that there was no evidence on the record that she provided inaccurate information or that she was there to provide inaccurate information. Let's go back to the... You said on the 6th she was ready, willing, and able to provide accurate information. Yes, Your Honor. Wasn't there testimony that she was released from the penitentiary on February 28th? Yes, Your Honor. All right. So isn't March 6th beyond the realm of the statute? That is not within five days. So how can you rely on this information that she was ready, willing, and able to provide when it's past the mandate of the statute, which is five days? Because we don't know where she was living and how long she'd been living there, we don't know what time period was within five days of her establishment of her residence  We don't know when she arrived in Chicago. No, but is it tied to when she establishes it or is it tied to when she's released? Those are two separate portions of the statute. And the state in this case indicted her with having failed to register within five days of having established a residence or temporary domicile. They did not indict her with having failed to register within five days of being released from a period of incarceration. And those are two separate... All right. So that your position is that the five-day period is tied into when she establishes residency. Under the indictment, yes, Your Honor. And in this case, we know that she appeared on March 4th and we appeared on March 6th. And the state introduced no evidence that trial has suggested on either of those dates that Sherry Gray provided inaccurate information or was unwilling to provide some of the information which is required by the Department of State Police. How can the statute have really any significance if it's actually tied to when the defendant chooses to establish residency? Well, in two ways, Your Honor. I mean, this court in Peterson found that someone who has not registered a permanent address is subjected to the weekly reporting requirement. So speaking to your question... Well, we have quite a distinction between our facts and the Peterson facts because in Peterson, the defendant had a 63 IQ which the court took very significant cognizance of. And that's not the case here. That's true, Your Honor. But in Peterson, the fact of the matter is, under the purpose of the statute, which is to maintain and collect information about sex offenders, and under the wording of the statute, the section that speaks to the temporary reporting requirement says that anyone who lacks a fixed residence is expected to register weekly. To appear weekly. Appear weekly. Is there any question as to whether your client, whether the defendant in this case, attempted to satisfy the requirements of a homeless person? All we know is that she appeared twice. March 4th and March 6th. Then she no longer appeared because ultimately when she was picked up, that was the court set a date of January 15th, which she didn't appear, and January 16th again, where she didn't appear. So the next appearance was clearly way beyond the statutory period of attendance that was required. So there was no attempt here by your client to act as if she were a homeless person, so as to satisfy the prerequisites for a homeless person. So how does that come into play as being any kind of indication of compliance? Because, Your Honor, the problem is that we don't know where she was living. Because the state introduced no evidence to say she's been living at this location, she's definitely in the city of Chicago. She hasn't left. Because we don't know where she was living, we don't know whether she was still in Chicago and thus required to register in the city of Chicago after March 6th. Absent testimony, as there has been in other cases of a neighbor or individuals that have come in to contact her or seen where she was living, because we don't know where she was living, how long she's been living there, what the circumstances of that situation were. Well, we know she lives in Chicago, going at least as far as the January 15th and January 16th were concerned. So even if we would take that defense literally without attempting to examine whether it's subject to some common sense inferences as to earlier domiciles or a period where she was a domiciliary of this district where she was required to register, we know that on January 15th and January 16th she was, and she did not appear even then. So don't we at least have a technical basis for noncompliance under any circumstances? Your Honor, our position is that the only thing that's relevant in terms of the reasonable doubt argument is what occurred before the date of the indictment, which was in June of 2008. And the only evidence before the court regarding where Sherry Gray was before June of 2008 was her statement of intended address when she was released from IDOC and then her appearance twice at the Chicago Police Department on March 4th and March 6th. So the post-indictment period wouldn't count at all other than even, your argument is that it wouldn't count even to aggravate for sentencing purposes the determination of the sentence that the court sought to impose. Your Honor. I know we're switching gears here a little bit. We might as well get it. Whether that information could go to sentencing, our position is that what was relevant in terms of whether she committed this offense and whether the state proved this case beyond a reasonable doubt is what transpired before June of 2008. Whether that could go into the court's consideration for aggravating purposes is an entirely separate question and not one that we addressed in our brief. I would certainly agree that that information could perhaps come into consideration for aggravating purposes, but not to determine whether or not she satisfied her obligations under the statute. Was this the first time that she had come out of penitentiary after the conviction for the aggravated criminal sexual assault? No, Your Honor. She came out of the penitentiary for a period after that. She had been out. She was back in the penitentiary for a failure to register. So this was a person who had failed to register once before? Yes, Your Honor. Was there any information regarding that failure in the record? No. What the circumstances were? No, Your Honor. There was no information about that failure to register in the record. And the fact of the matter is, in this case, she's gotten out of prison. She's clearly attempting to comply with her obligations to register under the statute, and the trial court in fact... Why can you say that she tried to comply? Based on, again, what information is it that you're telling us is in the record to support that there was an effort to actually comply? Well, I believe that was a factual finding that the court made. It said that she's there. She's trying to comply. The fact that she appeared twice at the Chicago Police Department at their sex offender registration unit, and that she told the officer she was there to provide her address, to provide them with that information, and the Chicago Police officer said, in order to do that, you have to present one of these five forms of documentation, and if you do not have it, we will take no information from you. One of the officers testified that he interviewed the defendant when she came in. Did he state what address she gave for her residence? He stated that he would not take her address information because she did not have an ID. And was there any testimony from anybody as to what took place on March 4th, which was within the five days? No, Your Honor. The state elected not to present the officer that she met with on March 4th. So, for all we know, she appeared that day. She had some form of documentation, but the most that we can infer from the evidence is that she was turned away because she didn't have one of these five forms. Are you relying on information at the motion to quash in terms of this March 4th? No, Your Honor. What evidence is there about March 4th in the record? The evidence that came in about what occurred on March 4th is the registration log, which was introduced into evidence, and in the registration log it states that Sherry Gray appeared, and the officer that testified, Officer Hardy, who met with her on March 6th, testified that reviewing the record, he would surmise that she appeared on March 4th, that she attempted to register, but she could not do so because she did not have the information that they require. And there's nothing in the record that indicates what information she had from her? No, Your Honor. But if the state, if this court is inclined to find that the requirement of Section 3C-5, which requires the presentation of positive identification and documentation that substantiates proof of residency, that if that is one of something that's incorporated into Section 3A-1, that it was the state's burden to prove that she failed to present any information. And doesn't the state argue that it is incorporated by the length of the statute itself? That is the state's position. And what is your response to that argument? Our position is that she wasn't invited under this portion of the statute, that Section 3A-1 specifically references the time limits that are in Sections 3E and 3C, but says nothing about the other requirements. And Section 8 of the statute, which discusses the registration requirements, says nothing about the proof of address. And so our position is, as the trial court noted in this case, that the statute under which Sherry Gray was indicted says nothing about the proof of positive identification and documentation. That's true. It's that portion of the statute. And wouldn't there be a sufficient nexus between 3A-1 and 3C-5 to put your client on notice as to what provisions she was obligated?  Your Honor, I would note that the sex offender registration form that she filled out while she was incarcerated in IDOC, one of the components of that form is a long list of the registration requirements under the statute. And that form says nothing about the presentation of identification and documentation. It discusses when you're required to report, when, you know, the changing circumstances required you return to the law enforcement agency and the jurisdiction to report the change in your information. It says nothing about the presentation of documentation. Let's look at it from a different perspective for a moment, because there are probably certain kinds of presumptions that you might want to refer to as legal fictions that are realities. One of those legal fictions that have so been described in various cases is that everyone is presumed to know the law. Now, would there have been a duty to even give her any information in advance of her registration to compel her compliance as such? Wouldn't she have to know on her own what she's supposed to do? The next question being, if she is compelled to know on her own what she is supposed to do under 3A-1, wouldn't that automatically carry over as well to 3C-5? Your Honor, yes, there is a presumption that you know the law. But the Sex Offender Registration Act- Which is called a legal fiction, but we live with it. Yes, Your Honor. But the Sex Offender Registration Act does mandate that sex offenders are notified of their obligations under the law via this form that they're given when they're released from IDFC custody, in part because there is strict liability under the statute. And so in this case, even presuming that she knew that she was required to present this information, two points. First, she wasn't indicted under that portion of the statute. And second, because the state elected not to call the person who met with her on March 4th, they did not present evidence that she failed to present this information. The most that we can infer from that appearance that she made was that she did not have one of the five forms of documentation that the Chicago Police Department required. Your Honor, the use of the phrase or the word accurate, that's an adjective, in 3A1, wouldn't that be a reference to some requirement to establish accuracy? My position would be that that phrase accurate puts the offender on notice that failure to provide accurate information subjects them to criminal liability under the statute, as there's a separate provision under the statute holding offenders criminally liable if they provide inaccurate information when they register. And such the statement you need to provide accurate information is, if you provide false information, you are subjecting yourself to another term of incarceration because it's illegal under the statute to provide inaccurate information. Which would leave the statute vulnerable to very difficult and inefficient supervision or compliance determinations. Because at that point, you have no objective confirmation whatsoever to assist in the administration of the statute to determine whether this registration was nothing more than a sham. Which is very apt to be, considering the experience with that statute and the motivations to avoid its restrictions. Your Honor, two things. The statute mandates that the law enforcement agency is required to verify that the offender is actually living at the address where they stay. That's one of the requirements that's put upon the law enforcement agency. So how would the law enforcement agency verify that information? Or let's put it this way. Isn't the verification required under 3C-5 very reasonable in light of the burden that the state would carry to verify that information? And leading all the way down to the requirements imposed by the police of those five alternate kinds, forms of documentation, which include an ID, a license, a lease, a notarization by a neighbor. And those have various distinct cost increments contained in them. Wouldn't that be a very reasonable type of confirmation? And I know I'm crossing a lot of boundaries with that word, but I'll let you come forward. Your Honor, the requirement that the offender provide documentation, the problem that we have in this case is the trial court found is that it's a reasonable inference from the evidence that someone who's just been released from an eight-year term of incarceration. We're not really, you know, when we review the sufficiency of the evidence, though, we don't really look at what this trial judge determined. We look at whether any rational prior fact could find under the evidence that the state has established the evidence. We're really not looking at what that trial judge did, truly, when we review sufficiency of the evidence. Certainly, Your Honor. But the fact of the matter is, because we don't know what transpired on March 4th, we do know that Sherry Gray completed the sex offender registration form while she was incarcerated. She signed the statement. It bears her thumbprint. She initialed numerous portions. It was witnessed by an IDOC official. We know that that form was then sent to the Chicago Police Department under the mandate of the statute. The IDOC is required to send that form to the jurisdiction, the law enforcement agency in the jurisdiction where the offender expects to reside. They had that documentation. They had a sworn statement by Sherry Gray that she expected to reside at that address. That was insufficient in this case to substantiate the address for the Chicago Police Department, yet the state in this case relied on the same form to say that that form established beyond a reasonable doubt that Sherry Gray was residing in the city of Chicago. Do you agree that what she did provide is insufficient to satisfy 3C-5 if 3C-5 would apply to your defense? Your Honor, we don't know what she appeared with on March 4th. However, we know that our position would be that that sworn form would satisfy 3C-5, just as the Secretary of State will take a sworn affidavit as evidence of an address of an individual attempting to obtain a state ID. I mean, the state in this case appended the statute from the Secretary of State for what is mandatory in order to obtain a state ID. It includes a very long list of items that are sufficient in the Secretary of State's opinion to substantiate an address. And in this case, Sherry Gray was given a copy of that document, had a copy of the document she filled out at IDOC, but the Chicago Police Department has said, no, we will only accept one of these five items. And without this item, we will take no information from you and we will turn you around and very casually say, go and get one of those items and when you can, come back and register it. The way the Chicago Police Department is enforcing this act, it subverts the purpose of the Sex Offender Registration Act. We have 21 people on March 4th who were turned away for lack of proof of address. Although we're worried about individuals providing inaccurate information or providing false information, individuals who are repeatedly presenting themselves to register under the statute and comply with their duties, it's our position that these are not individuals that we are, these are not the individuals we should worry about subverting the system. Sherry Gray appears twice saying, I'm here, I'm ready and willing to satisfy my obligations under the statute, and the Chicago Police Department repeatedly turned her away because she doesn't have these five forms, which it's not a Department of State police policy. Is it a fact, though, that what she did provide would have been, I shouldn't say a fact, is it sufficient to satisfy the requirements of 3C5, which requires what her submissions to be, well, you dwell on the word positive, but I'm referring to the requirement that it substantiate proof of residence and registered address. Now, I'm curious about that, and I'm intrigued by the fact that you point out that the ID, the issuance of the ID by the state, which would have been accepted, would have satisfied itself with this one statement. Now, let me question you a little bit about that, because we don't have a record of that, do we? So, we don't know what the state would require for official ID picture identification, but I'm curious about it, if I might, with the indulgence of your colleague, depart just slightly from the record to give at least minimal exploration to that. Wouldn't the state look at the background of the subject who is requesting the identification, and wouldn't it question an application by a convicted felon for such identification, so that it wouldn't simply satisfy itself with the sworn statement of the applicant? The secretary's statement, again, that information is appended to the state's brief, the entirety of the statute, and there was note made in the brief that the court can take, can recognize the official documents of the secretary of state and what they require to obtain an ID. They have promulgated a policy that they require two forms of ID, and things that can satisfy that are things such as the affidavit of the person, but then in addition to that, they would likely have to present something along the lines of a utility bill or a piece of official mail from a state agency. Nothing like that was attempted by the defendant in this case, other than her own assertion and her own willingness to swear to it, to sign an affidavit. But she made no further attempts. I have a reason for asking this that is not simply a casual sojourn into that area, because to the extent that you claim that the provision in 3C-5 is too vague, vagueness is relative, so that any statute that has an infirmity based on vagueness is placed on a continuum. So that, for example, if I say that the weather outside is comfortable, everyone would agree that it's not vague if the weather here were 40 degrees below zero. But the closer you get, the more the question of vagueness may play a part. If, on the other hand, we say that it's 120 degrees in the shade, like in the streets of Baghdad, again, that would not be vague for purposes of saying you misrepresented the status of the weather. Now, if somebody says, I am providing proof that will substantiate my claim, and that proof consists of an affidavit from a felon, it's a close question, at the very least, as to whether it's too vague to vitiate that kind of assertion in satisfaction of the statute. Two points, if I may, since you touched upon the reasonable doubt argument as well as the vagueness argument. Speaking to the reasonable doubt argument, it was the state's burden in this case to prove that she, if the presentation of positive identification and documentation is required, it was the state's burden to prove that she didn't present that information. And because they did not call the person who met with her on March 4th, we actually have no idea what Sharon Gray appeared with, and it's quite possible that she showed up with something. We can just infer she didn't have one of the five items that the Chicago Police Department has deemed acceptable. Speaking to the vagueness point of your question, Your Honor, we think that the Chicago Police Department's interpretation of the statute is the best evidence that we have that the statute is vague, because the statute does not- require to subject herself to the embarrassment and restrictions of, what is it, Megan's Law? Is that what the statute says? Megan's Law. I can't speak to the original origins of the law. But, Your Honor, we don't know that she appeared with nothing, because we don't know who met with her. So we're presuming here that she arrived with nothing, when the evidence doesn't necessarily show that. The evidence at best shows she failed to appear with one of the five items that the Chicago Police Department has deemed acceptable. She could have shown up with her sworn form. She could have shown up with a piece of official mail that was sent to her at that address. And on the fourth, we just have no idea what happened, and it was the state's burden to prove she showed up with nothing, if that portion of the statute is applicable here. Under the vagueness portion of the statute, because there are- Well, is there any inference to be drawn from the testimony about that if they don't present with certain identification, they're not allowed to try to register? Yes, Your Honor. Officer Hardy said, if you do- I would not take her address information. There was no reason for me to take her address information, because she did not have an ID. And here, under the language of the statute, because there are not sufficiently definite standards promulgated under the statute for what would satisfy positive identification and documentation, it's allowed the Chicago Police Department to say, okay, well, we've decided that these five arbitrarily decided these are the only five documents that suffice. Whereas, perhaps someone that's downstate, that jurisdiction- Is there any further information on item six, again? Regarding? The lack of any identification of any kind. It's our position that Officer Hardy provided somewhat conflicting testimony. At the beginning of his testimony, he said, we require these five items. If they don't have these five items, they don't register. And then later on, when he was asked about Sherry Gray, he said that he appeared, he asked for proof of her address, she didn't have any, and he told her what she needed. It's our position that- So that testimony doesn't show, or it can't be inferred, that she didn't have anything with her at all? It could be inferred that she didn't have anything with her at all, but it also can be inferred that she didn't have one of these five forms that they consider to be sufficient proof of address. And again, we have no idea what she showed up with on the 4th, and she appeared two days later, so it's possible that she returned two days later to say, listen, I just got out of prison, I can't get one of these five things, can I register some other way? And he's saying no. Now you're starting to go into an area of complete supposition. There's no suggestion about any conversation like that. No, Your Honor, but at the same time, I think it's an inference from the fact that she appeared two days in a row. I think that to get into things that she may have said or done on a date, I don't know how we could possibly infer that. There is a law that seems to satisfy the prerequisites of a business record, which you don't challenge, which would indicate that she only appeared those two times. Well, Your Honor, it's our position that counsel may have strategically decided to allow that evidence in because it showed that she appeared two times, and as she'd been indicted under Section 3A1, that those appearances show that she satisfied the terms of 3A1 and that she was required to appear, provide accurate information as required by the Department of State Police. So there would be good reason for counsel to allow that evidence to come in because it shows that his client, to the best of her ability, did what she could to comply with the terms of the statute. But for the Chicago Police Department's refusal to take any information from her, she would have satisfied the requirements that were placed upon her by Section 3A1. Counsel, the time has run right past us. So as an act of generosity, which I'm sure my panel would want me to extend, supposing we give you two minutes with relatively little interruption to finish up where you want to go. Yes, Your Honor. Thank you. Just in sum, we do believe that the state was required to prove numerous elements in order to satisfy its burden in this case. It was required to prove that she established a residence or temporary domicile. The evidence was insufficient on that point. She appeared within the time requirements as best they can be construed in the state's favor within five days of the earliest date on which she could have established a residence or temporary domicile. All of the other elements weigh in her favor under Section 3A1. We've talked at length about our position on Section 3C5, so I won't go there. But as far as the vagueness statute, it's simply our position that the legislature was required to satisfy due process. It was required to promulgate language in the statute which both gives sufficient notice to an individual's ordinary intelligence of what conduct is prohibited and, moreover, to provide sufficiently definite standards to guide the hand of law enforcement and that the terms of the statute in this case simply don't do that. And the evidence of that is how the Chicago Police Department has elected to interpret the statute. I don't believe an individual of ordinary intelligence would walk into the Chicago Police Department and automatically surmise that these five items are the only things that are sufficient to satisfy the terms of the statute, especially given the fact that other statutes in the state of Illinois allow for the presentation of other information. I didn't say no interruptions. I said little. Certainly, Your Honor. And would a person of ordinary intelligence think they can walk into the police department and simply say this is where I intend to live and satisfy the address requirement without any further gesture? They may believe that perhaps if they have a temporary domicile where they're unable to acquire information that they're allowed to present themselves and simply provide the information under the terms of the statute. It actually appears that the presentation of documentation must substantiate a residence. It doesn't say anything about a temporary domicile. So it's completely possible that someone with a temporary domicile would walk in and say, I believe that I should be able to satisfy the terms of the statute by just giving you this information. They have to bring a gas bill or something of that nature. Exactly, Your Honor. We believe that a person of ordinary intelligence would think those things would suffice and hear the Chicago Police Department. It doesn't matter what the Chicago Police Department would require. Let's assume that their requirements are, in fact, ultra-virus beyond their power to impose because they're not legislators, as you argued. But that wouldn't excuse your client from attempting compliance that should reasonably satisfy the statute, which is not the case with a simple assertion on her part of this is where I intend to live. Again, Your Honor, the state failed to prove she showed up with nothing. So it's quite possible she showed up on the 4th with a utility bill or with a letter from an official government agency and the Chicago Police Department said that's not enough and turned her away. Because the state failed to present that officer, we don't have evidence on that point. But wouldn't the law incorporate those details? No, Your Honor. It simply says, I mean, the two entries are the exact same. Officer Hardy said she didn't have one of these five items. I turned her away and it's the exact same indication. There's nothing on the law to say this person showed up with something and it wasn't deemed adequate and was turned away. The law goes uniform in saying proof of address and we know from the testimony that there's five items that can satisfy that requirement for the Chicago Police Department. So in the interest of time, for these reasons and those in the briefs, we ask that you... They'll be given some time for rebuttal. Thank you, Your Honor. We ask that you reverse Ms. Gray's conviction. Thank you. Good morning once again. Mary Bowen on behalf of the people. The thrust of the defendant's argument below was that appearing at a police station is the same as registering under the Sex Offender Registration Act. And now it's marked on appeal a bit. Well, what's interesting is that was not the claim made below, but that is one of the claims made here on appeal. But when you look at the Registration Act, you're looking at actually two different things. You're looking at the administrative regulation, which does put burdens on individuals when they come in to register. And then you're looking at the violation of the act, which is the criminal penalty. And so when you're looking at the registration itself, the defendant's argument kind of boils down to, well, if we analogize it as some courts have to driver's license procedures, I went to the Secretary of State's facility, I walked in, I took a number, or I sat down on a chair, but I didn't have anything with me, and I just said I want a license, and they said, sorry, you have to bring some ID, and they walked out the door. You have a problem there. Let's assume, although it's just because I made that assumption in interrogating your opponent, it doesn't mean that I live by that assumption. But let's assume that an assertion of an address is really doing nothing. Although, obviously, an argument could be made that that itself is something. And if it's doing nothing, then perhaps another gesture, another attempt should be made. But what about the bar the door aspect of this, where Officer Hardy said, we're not going to accept anything else. Where does that go? To what extent is the defendant entitled to rely on the fact that any further offers of proof or gestures will be unacceptable based on that clear statement? Right. Well, on March 4th, the police logs, which the court quickly notes were admitted as business records, show that Sherry Gray showed up, and as the court has noted, this is not the first time that Sherry Gray has been convicted for a violation of the Sex Offender Registration Act. So she shows up to register, and she is turned away because she has no proof of address. And so two days later, when she shows back up again, and Officer Hardy talks to her this time, he questions her, and she says, I don't have my ID. And he says, well, go and get it. And she said, fine, and she walks out. And so once again, the law records that she appeared with no registration. All of this speculation about the form. The defendant says nothing else will do. Actually, all this information of speculation about what the list should be and whether the list should include X, Y, and Z, you can't argue that the list should include X, Y, and Z if you provided no documentation. There is no evidence in this record that Sherry Gray provided any documentation. All of this is supposition. All of this is maybe she could have and she might have and maybe she would have brought a letter. And her declaration evidently that she was given by Sturworth when she was released did not include that requirement, did it? It included the requirement that she appear to register and provide accurate information. That is what the law requires. I'm sorry? Well, does this section that you're referring to under which she was charged, either in the information or indictment under which she was charged or even in the statute itself mention accurate information in that particular provision? Well, the statute does require accurate information. And under Section 10 of the statute, a violation of any of the provisions will subject a person who is required to register to a criminal penalty. Now, the Dennis Monarch case is not charged. I mean, in the actual charge, there's no statement about failing to provide accurate information. That's correct. Failing to register. That's correct. She failed to register because of the two pieces of it. Are you saying she didn't provide accurate information? Isn't there a distinction between the information being accurate and the information being verifiable? And the information is accurate. Without being verifiable. The two are independent of each other. That's very true. So she could have provided accurate information, but she didn't have any corroboration for it. But the corroboration doesn't make it more accurate. It makes it more reliable. But what we have here is the record which we must live by. The record suggests that she, not only before she was found guilty, but before she was released from the penitentiary, when she was arrested, when she showed up, and subsequently later, after she failed to appear multiple times. Does the record suggest that the address that she gave initially, the 117 North Laverne, is actually where she was residing during this time? That is the defendant's counsel's argument throughout this entire proceeding. But doesn't that record suggest that that's actually where she was living? That is the only information that we have, and that is the information that we're relying on. When you fill out your initial SOAR notification form, which is done on the day of the release, which is what Sarah Welch testified to, that form stated that Laverne address. And then on the 4th, the defendant showed up in Chicago and went to the police station and said, I'm ready to register. So could a rational prior fact conclude that the address where she was living within the five days of getting out of the penitentiary was 117, what street? Laverne. Laverne, and that she, that was what she would have to at least show. That's exactly what. No documentation, anything, to show that that's where she was residing. That is what a prior fact could rationally infer, because that is what the evidence shows. We don't need to speculate. What we have is what is in this record. We have certain responsibilities that are placed on registrants, and we know that more than 323 days after she was released from prison, she still hadn't registered. But she was living at 117. But that is the information that we have. When she was released from prison, that is the statement that she gave, which begins to populate the registry. Then the registry allows registrants a few days. Now it's a little bit shorter than it used to be. It used to be ten days, then it was five days, now it's three days to actually go to that residence. She may change her mind, in which case she will show up at whatever local police department she goes to and then go ahead and change that registry. But the initial population of that database from the time she's released allows for the law enforcement monitoring function, which is one of the core functions. I'm sorry, Justice House, did you get? Well, I'm going to get to that monitoring function. Okay. I heard a statement made on the first argument. There were 21 people who showed up on March 4th, and they didn't have the ID. The officer testifies she came in on March 6th, and he didn't take any information, but she didn't have any ID. Well, here we have a situation where the law is designed to provide a monitoring function, and people are coming in and telling them where they're located. But we have the agency charged with it refusing to even take that information. And so I think it doesn't appear that there's a tremendous bad enforcement here. Supposedly a crime occurred that the description matched this person, and this sergeant refused to even take any information. Wouldn't he be better served here had the information been taken down? Let's think about the actual. Or is this statute really just a gotcha statute? Well, the statute's more than that, because it's not just the monitoring function. There are follow-up functions. There's a gotcha statute, right? There are follow-up functions. Well, this particular person had 323 days. This trial court got her a major break and would have given her a windfall. It is her second time for failing to register. She was convicted of escape for walking away from the prior floor change. I think we should narrow our focus a little bit here. There may be other infirmities in the conduct of this defendant, but they're not under scrutiny in this appeal. Well, neither is whether other people don't do their diligence. I think it is important. But there is relevance, certainly, in Justice House's comments. Yes, there is. Here the defendant did come to offer what we have every reason to believe was accurate information. And here we have the state saying, no, we're going to hold you to the five books of Moses. It's got to be this or nothing. And we have a double question here. First, we don't know if the statute requires anything more than accurate information for this defendant, because that's the provision she was indicted with. And since there's some basis for questioning the constitutional clarity of 3.5c, and we have no reason to think that the police are necessarily, in this particular case, the arbiters of what constitutes information that would satisfy 3.5c if 3.5c applied. Okay. So let me respond to a few pieces. First, the Justice House. The statute itself, to your question, is a larger statute than simply coming in and saying, I'm at this address, please take this information. Because what the statute then requires is that police have certain duties. They will go out. They try to monitor information. They might do sweeps. And they'll be wasting tremendous resources if individuals can come in and simply give an address and say, I've met my duty. I'm never there, but I've met my duty. Now find me somewhere in the city or the state or some other state and now try to deal with me. So the duty is placed, yes, the burden is placed on that registrant precisely because of the crimes that they have committed. It is more than just walking in and saying, I am here. That is enough. It is not enough. What tells us that accurate information cannot be a statement from the offender that they're at, they're living in a particular location? Because the defendant is on notice. And now I'll turn to Justice Gordon's point, and that is that suddenly we are challenging the indictment. But it feeds into the point that you're making and the point that you made earlier. Suddenly we're challenging the indictment. And no motion to dismiss was made on this indictment. No challenge was made until we get here on appeal. And suddenly now we want to narrow the notice. We've got a notice. Well, that's the only challenge in that area because even if the indictment would extend to 35C, 35C is being vigorously challenged here in terms of its vagueness. Particularly with another case telling us, the loitering case, that simply requiring credible information is not sufficiently clear. Right. The word credible is not sufficiently clear. Is there support for vagueness when you have 21 people appearing on any given day and they're actually there to try to register and they're being told you don't have what you need? Is there a problem? Does that feed into this vagueness argument? No. Or even when they're at the penitentiary and they're being told they have to register, that when they do go, were these 21 people all trying to just? Well, you see the point of the statute and the reason that we have a sex offender. Were they trying to evade their requirements, all 21? Or is there a suggestion that they're not able to comply because the statute is vague? The statute is not vague. In positive documentation of identification, the statute, the Supreme Court in looking at the Hazen statute looked at this type of language and said the legislature doesn't have to provide a list of every possible scenario or every potential avenue or every method by which the statute can be met or can be violated. It is enough if it's common, ordinary experience. And the statute does describe the types of documentation that can be supplied. So it describes Internet addresses and street addresses and fingerprints and photographs. There are all kinds of information in the statute that says to a registrant, you need to provide more than just showing up, taking your number and saying, hey, I'm here, register me. Because then it impacts the police responsibilities, the law enforcement responsibilities, the public information is to notice. And if you provide wrong information, which you could easily do by walking in and having no verification, no positive documentation requirement, then essentially it undermines the purpose of the statute. Because one of the reasons that the SORA exists is because sex offenders thrive in anonymity. And that was an issue that was raised in Dennis Molnar in the Illinois Supreme Court in 2006. In Dennis Molnar, the defendant made a claim that he had made a good faith attempt or that he had some sort of defense of good faith. And the Illinois Supreme Court in Dennis Molnar said, no, the danger of allowing this person unfettered freedom within the community without law enforcement being able to monitor them means that we are going to find that this is a strict liability offense. But the question is, even assuming that 3C-5 is an operable provision, are the five prerequisites by the police the only way to satisfy 3-5-C? Or is it simply their way for whatever expedience that way may have, insofar as it creates a kind of no-brainer situation for the police taking that information to see if the checklist of those five items are met. But that's not the defendant's responsibility. And what impact of law does this arbitrary, and I'm answering the question with that word, at least from my perspective at the moment, does the adoption by the police of those five measures in the face of other types of information that would equally satisfy the requirements of 3-5-C, but not as expediently for the police? Well, the defendant in this case, in the vagueness piece of this brief, is limited to an as-applied challenge. It's not a challenge. You have to cope with the fact that the police have turned away this defendant, and when they turn away this defendant, is the defendant still obligated to make an attempt that is a feudal lily? Well, the defendant is required to provide accurate information and proof of address information. Isn't there more though? The statute requires positive, shall provide positive identification and documentation. Doesn't documentation suggest that you can't simply walk in the police station and say, hi, I am, and I live at. Is that documentation? I mean, I think it can be reasonably argued that the statute clearly requires something more than stating I'm going to live at this address. That's correct. What documentation, if any, did the defendant present on March 4th? And that's the point, none. How do you know? Because the only thing that we have in evidence is that the defendant appeared, had no proof of address, and left. Well, proof of address means the five things. That means the five things. Well, how do we know? To be honest, we don't know that. All we have, the defendant never testified. We didn't start on how to testify, what the proof was, the proof of address, or the five things he noted. But we don't know what this defendant appeared with on March 4th. We know that this defendant was turned away for the failure to provide proof of address. We don't know the methods. On the 6th, he also told him she was going to go get her ID. That's correct. He gave her some examples. You could come with this, you could come with that. Here are some examples that you could come with. So I think Officer Hardy was trying to help her. Was there a written ruling to determine what he would accept, or is there something different? Is there a written policy that was introduced? It's simply documentation. And I gave an example in the back of my brief. There is none. But there is none because it is common sense. What vagueness requires is that there be some minimal standard. Common sense ain't so common, I'll tell you. But common sense is more than just my word. Because if I'm going to register, I'm a convicted sex offender. The policy behind the Sex Offender Registration Act is to keep them from anonymity, from hiding, from popping up at the end of the registration period and saying, oh, here, I've been in Chicago all along. Well, my point is this. The statute says you just provide accurate information, current address. Finally, there's positive identification and documentation. The Chicago Police Department has come up with something different. They're saying you want these things. Now, a person reading the statute would not necessarily know that an affidavit is required. And you're actually penalizing her for not complying with Chicago Police Department regulations as opposed to what the statute actually says. And so that's the question is, how can we be penalizing her if she didn't have any identification? If she said, I'm going to go home and get my ID. So she knows that there is a way for her to comply. Officer Hardy has helped her with that. And Officer Hardy has given her a date. We're trying to comply with Chicago Police Department requirements, but it's a requirement of the law, the statute here. The law requires documentation. Documentation. Now, let's go back and forth. You're saying that she didn't have the proof. Now, how is that to be interpreted? Is that proof that Chicago PD is requiring, or is that any documentation? How do we know there was no documentation? How do we know that she did not have any documentation? Because we have the record. That is what we must limit ourselves to. What's the interpretation of that record? Well, any time you come up here on a sufficiency of the evidence, or even this vagueness challenge, you look at the record. Because this has to be an as-applied challenge. It has to be the evidence before the trial court. The trial court in this case felt that she had partially complied, felt that she had reported, she had appeared at the office. And the defense argument was that she was in the same place and that she had this information. The evidence that we have from Officer Hardy is she had no identification that day. She was going to go home and get it. Let's go to the fourth. That's what I want to get to. But even on the fourth, the only information that we have in the police records, which is the only information that is in the record of this case, is that she had no proof of access. Isn't it the burden on you to prove what she did or didn't do on the fourth? Well, the Registration Act, the burden is on the defendant to come in and to prove it. That's why we're here. This is an appeal from the defendant's conviction. Exactly. Where you do have the burden of proof. And I think an argument could be made that the state, well, the argument has been made, that the state did not establish that she did not comply with the requirements because showing that the Chicago police policy requires such and such is not proof beyond a reasonable doubt that she didn't appear with positive identification and documentation. I think that's really the argument. If you have this policy, it's really sort of a, you know, it's not the statute. The Chicago Police Department is trying to enforce their obligation. They're turning people away for not having the kind of identification and documentation that the Chicago Police Department wants. And so, if the burden is on the state to show that she didn't provide what the statute requires, since, you know, all we have is what the police department requires, and that wasn't apparently presented, that's not necessarily proof beyond a reasonable doubt that she didn't comply with the statute. Right. And I see the defendant's argument there, but the fact is we're limited to this record, and in this record we have certain requirements that must be met, and none of those requirements have been met. And what we do have is positive evidence from which an inference can be made, because the defense counsel's argument at trial was she couldn't get an ID. She didn't have an ID because she was just released. So there was no argument that she had a certain kind of lease or a letter or a piece of mail. So that argument is just speculation here on appeal. We're imagining that maybe there would be other documents. But those were not questions before the trial court. At this point, I think I'd better give you the same two minutes subject to the same conditions. And I think I can wrap it up even more quickly than that. I can simply state that the defendant is a sex offender required to register. There's no question about that. She had notice that she was required to register, and she failed to register as she was required to do under the Sex Offender Registration Act. This court need not reach the methods by which registration can apply to other persons in other circumstances. This defendant came with no registration. She cannot simply report and say that is sufficient. Dennis Molnar says you cannot do that. There is no good, safe, partial compliance under this statute. The defendant was properly convicted, and we would ask that this court affirm the defendant's conviction. Thank you. Thank you. Would two minutes be too much time for you to talk? I have a little. I'll try to be as quick as possible, Your Honor. And if that's a hint, I appreciate it. Quickly, Your Honor, while Molnar found that partial compliance is insufficient, we remain also under the dictates of the Illinois Criminal Code, which says you cannot be held criminally liable for an action which you're unable to perform. And we maintain that it was the Chicago Police Department that prevented her from fulfilling her obligation under this statute. I would also note that the Administrative Code says nothing about the positive identification and documentation that needs to be presented. There's nothing in the Administrative Code that provides any additional definition of that term. And the statute noted, or opposing counsel noted, all of the information that's described in the statute about what satisfies the information, the information that you have to provide. But information is not documentation, and where they've provided a very detailed list that's quite long and also defers to the state police for modification, they've done no such thing with the requirement for documentation. And finally, I would just note that the trial court, as far as the testimony about what the Chicago Police Department required, the trial court actually found, in this case, that the reason she was turned away at the Chicago Police Department was because she did not have one of these five items, not because she had not presented anything, but that those five items were the policy that the Chicago Police Department had promulgated and held her to. Thank you. This case was, in fact, so stellarly argued, and the briefs were superb, and will be taken under review. Bye folks.